IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KARENA MONDRIANH, a/k/a KARENA | ) | Case No. |
| YBARRA, a/k/a KARENA LITTLE, a/k/a | ) | |
| KARENA JOWERS, a/k/a KARENA | ) | |
| HUBBARD, a/k/a KAREN MONDRIANH, | ) | |
| a/k/a KAREN YBARRA, | ) | |
| d/b/a MONDRIANH & ASSOCIATES, PA, | ) | |
| d/b/a YBARRA GLOBAL a/k/a YBARRA | ) | |
| GLOBAL BUSINESS SOLUTIONS, | ) | |
| d/b/a SAVE UR WEALTH, | ) | |
| d/b/a EMPOWER UR LIFE, | ) | |
| d/b/a MONDRIANH TAX SERVICES. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION

The United States of America, for its complaint against the defendant, alleges as follows:

1.     Karena Mondrianh knowingly prepares fraudulent tax returns that understate taxable income.  Under various trade names, Mondrianh has prepared hundreds of tax returns for her customers, most of whom are defense contractors working overseas.  Mondrianh serially understates her customers' tax liabilities by inventing – sometimes without her customers' knowledge – false IRS Form Schedule C expenses and by falsely claiming that her customers' income is exempt from tax under the foreign earned income exclusion.  The United States estimates that Mondrianh's scheme may have cost the U.S. Treasury as much as $26 million in lost tax revenue, and the harm to the United States continues every day that Mondrianh remains in business.

2.      This is a civil action brought by the United States pursuant to Sections 7402, 7407, and 7408 of the Internal Revenue Code (26 U.S.C.) ("I.R.C.") to enjoin Mondrianh from the following activities:

a.      Preparing or filing, or assisting in, or directing the preparation or filing of any federal tax return, amended return, or other federal tax documents or forms for any other person or entity;

b.      Directly or indirectly advising taxpayers to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the misuse of false IRS Forms 1040, 1040X, 2555, Schedule C, or other IRS forms;

c.      Filing, providing forms for, or otherwise aiding and abetting the filing of false IRS Forms 1040, 1040X, 2555, Schedule C, or any other IRS forms for herself or others;

d.      Engaging in conduct subject to penalty under I.R.C. §§ 6694 or 6701, including preparing and filing tax returns and other documents that understate the tax liabilities of others;

e.      Engaging in conduct subject to penalty under I.R.C. § 7212(a), including interfering with or impeding the IRS's examination of federal tax returns;

f.      Preparing her own federal income tax return in a manner that fabricates expenses or purposely understates her own tax liability;

g.      Representing anyone other than herself before the IRS;

h.      Engaging in any other conduct that is subject to penalty under the I.R.C. or that

interferes with the proper administration and enforcement of the internal revenue

laws.

## Jurisdiction and Venue

3.      This action has been authorized by the Chief Counsel of the Internal Revenue

Service and commenced at the direction of the Attorney General of the United States pursuant to

I.R.C. §§ 7401, 7402, 7407, and 7408.

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C §§ 1340 and

1345, and I.R.C. §§ 7402.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Mondrianh

resides in this judicial district, and further because Mondrianh provided tax advice and tax return

preparation services within the jurisdiction of this Court.

## Karena Mondrianh

6.      Mondrianh resides in Southlake, Tarrant County, Texas.  Mondrianh holds herself

out as a professional in many trades, including landscape design, hair dressing, life coaching,

"firewalk" instruction, and tax preparation.  Mondrianh has prepared federal tax returns for

compensation since at least 2007.

7.      Mondrianh has filed federal income tax returns with the IRS under at least two

business names: Mondrianh & Associates, PA and Ybarra Global.  However, in correspondence

with her tax preparation customers, Mondrianh has also used an email address with the domain

name "SaveURWealth.com."  She has also deposited checks relating to her tax preparation

business into bank accounts held in the names "Empower UR Life" and "Mondrianh Tax

Services."

8.      Over the years, Mondrianh has been married and divorced several times. Mondrianh has been known by several variations of her name, including: Karena Ybarra, Karena Little, Karena Jowers, Karena Hubbard, Karen Mondrianh, and Karen Ybarra.

**Mondrianh Falsified IRS Form Schedule C Expenses**

9.      Mondrianh's customers are primarily people working with defense contractors in or near the combat zones of Iraq and Afghanistan with companies such as Blackwater and DynCorp International.  Some of these customers are former military personnel with highly specialized experience, typically including both some type of security operation experience (e.g., personnel that provide personal defense and security) and special equipment skills (e.g., airplane or helicopter pilots than can operate in active combat zones).  Most of Mondrianh's new customers come to her as referrals from existing customers.

10.      Generally, Mondrianh's customers work either as employees operating under individually executed employment contracts, or as independent contractors operating under independently negotiated contracts.  In either case, the contracts define the terms of the customers' service including, but not limited to, compensation, benefits, duration of employment or term of service as a contractor, training requirements, supervisory structure, and travel policies.

11.      Once a Mondrianh customer signs a contract for overseas service, that customer incurs very few out-of-pocket expenses.  When contractors or employees are deployed, the defense contracting companies pay for their travel to and from the United States, outfit them with all the equipment, uniforms, and gear they will need for their mission, and provide the customers with housing and meals.

12.     Mondrianh falsifies on her customers' federal income tax returns travel, equipment, and other expenses that were never incurred by her customers in conjunction with their overseas service.  By claiming these false expense deductions, Mondrianh impermissibly lowers her customers' reported taxable income.

13.     For example, Mondrianh prepared a 2007 amended federal tax return for M.J., who had spent approximately 350 days of the year working for Computer Sciences Corp in Iraq. M.J.'s return reported gross receipts for tax year 2007 of $142,000; however, Mondrianh fabricated expenses on IRS Form Schedule C of the amended return, including office expenses ($4,871), rent for vehicles or machinery ($12,997), repair and supply expenses ($27,571), and travel expenses ($28,744).  M.J. did not incur any of these expenses, and she did not provide Mondrianh with any of these expense figures: Mondrianh manufactured them out of whole cloth.

14.     Not only did Mondrianh falsify expenses on M.J.'s 2007 amended federal income tax return, but Mondrianh also falsified M.J.'s signature on the amended return.  Indeed, Mondrianh never showed M.J. the 2007 amended federal tax return before Mondrianh filed it with the IRS.

15.     Similarly, G.B., who worked in Afghanistan during tax year 2010, had his 2010 federal income tax return prepared by Mondrianh.  G.B. earned over $230,000 as a pilot and consultant in tax year 2010; however, Mondrianh improperly lowered G.B.'s IRS Form Schedule C gross income to just $82,831 by falsely claiming over $147,000 in bogus "materials and supplies" expenses.  G.B. did not incur any expense for materials or supplies during 2010 and G.B. did not tell Mondrianh that he had incurred the expenses Mondrianh claimed on his return.

16.     Mondrianh further reduced G.B.'s Schedule C income by falsely claiming on his return that he incurred $28,741 in travel expenses.  Those claimed expenses were fabrications.

By the time Mondrianh had finished falsifying G.B.'s IRS Form Schedule C, she transmogrified more than $230,000 of income into a reported net loss of over $20,000.

### Mondrianh Falsely Claimed the Foreign Earned Income Exclusion

17.     I.R.C. § 911 permits the exclusion of certain income for citizens or residents of the United States who are living abroad.  Section 911(a) provides that, if a taxpayer qualifies and elects to do so, the taxpayer may exclude from gross income a portion of the taxpayer's foreign earned income.  For example, in tax year 2012, a qualified individual could lawfully exclude a maximum of $95,100 from gross income.

18.     Section 911(d)(1) defines a qualified individual as someone whose tax home is in a foreign country and who has either (a) become a *bona fide* resident of a foreign country or (b) a United States citizen who, during any 12 month period, was "present in a foreign country or countries during at least 330 full days in such period."

19.     The foreign earned income exclusion must be claimed on IRS Form 2555. However, the IRS has discovered several instances where Mondrianh improperly claimed the foreign earned income exclusion on customers' IRS Forms Schedule C.

20.     When Mondrianh has used IRS Form 2555 to claim the foreign earned income exclusion on behalf of her customers, Mondrianh has improperly asserted that her customers qualify as *bona fide* residents of the foreign country.  They do not.  Although Mondrianh's customers work in or near the combat zones of Iraq and Afghanistan, upon information and belief, none have in fact elected to become *bona fide* residents of either country.

21.     In some instances, Mondrianh's customers might satisfy the "physical presence" test; however, the IRS has confirmed through audit numerous instances where Mondrianh improperly claimed the foreign earned exclusion for customers who did not satisfy that test.

22.     For instance, R.L. worked as a helicopter pilot in Afghanistan in part of 2010.  As a contractor for Presidential Airways, R.L.'s deployment schedule was approximately 60 days in Afghanistan and 30 days back in the United States.  R.L.'s first rotation to Afghanistan did not commence until June 20, 2010.

23.     In 2010, R. L. spent only 134 days overseas, and therefore did not meet the physical presence standard to qualify for the foreign earned income exclusion.  Nonetheless, Mondrianh improperly excluded as foreign earned income $68,497 from R.L.'s gross income on his 2010 federal income tax return.  Mondrianh never asked R.L. for any information to support the foreign earned income exclusion, and thus had no basis for claiming the exclusion of his return.

24.     Similarly, DynCorp International hired W.P. as a rotary wing pilot operating in Afghanistan.  W.P. worked in Afghanistan for only 47 days in 2009, and therefore did not meet the physical presence standard to qualify for the foreign earned income exclusion.  Nonetheless, Mondrianh improperly excluded as foreign earned $89,898 from W.P.'s gross income on his 2009 federal income tax return.

**<u>Mondrianh Refused to Disclose Her Customer List to the IRS</u>**

25.     Tax return preparers are required to retain copies of federal income tax returns that they have prepared for at least three years or keep a list of the customers for whom they have prepared federal tax income returns. I.R.C. § 6107(b)(1).  Tax return preparers are also required to make copies of the federal tax returns they have prepared or their customer lists available to the IRS upon request. I.R.C. § 6107(b)(2).  Any tax return preparer who fails to comply with I.R.C. § 6107(b) is subject to penalty under I.R.C. § 6695(d).

26.     On October 26, 2011, the IRS served Mondrianh with an Information Document Request (IDR) that requested, among other documents, a list of her tax preparation customers. Mondrianh failed to respond to the Service's IDR.

27.     On September 27, 2012, the IRS served Mondrianh with a summons that requested, among other documents, a list of her tax preparation customers.  Not only did Mondrianh fail to respond to that summons, but Mondrianh also returned the summons to the IRS fraudulently using another woman's name and falsely claiming that Mondrianh no longer lived at the address listed in the IRS summons.

**Mondrianh Corruptly Endeavored to Impede or Obstruct the IRS**

28.     Mondrianh has also intentionally undertaken a course of conduct to impede the IRS's examination of her customers' tax returns.  Specifically, Mondrianh has falsely asserted the "combat zone" protections afforded by I.R.C. § 7508 to thwart the IRS's examination and collection efforts.

29.     I.R.C. § 7508 protects taxpayers that have been deployed to a combat zone by postponing time limits for performing certain acts, such as filing tax returns and responding to an IRS examination, and the statute protects the taxpayer from collection of any outstanding tax liability while the taxpayer is deployed.

30.     When the IRS began examining Mondrianh's customers' tax returns, revenue agents across the country began to receive form letters prepared by Mondrianh that falsely claimed that the customers were deployed to or employed in a combat zone.

31.     For example, in August 2012, the IRS sent B.T. and A. T., a married couple from Vancouver, Washington, an IRS Form Letter 1912, which indicated that the IRS was examining their federal tax return.  Days later, B.T. and A.T. sent to the IRS revenue agent a copy of

Mondrianh's combat zone form letter, claiming that B.T. was currently deployed and claiming

protection from further action under I.R.C. § 7508.

32.     The IRS revenue agent had seen Mondrianh's combat zone form letter in another

examination, and suspected that Mondrianh was using the form letter falsely to delay

examination.  The revenue agent contacted Blackwater, and the company confirmed B.T.'s last

day of deployment was February 14, 2012.  Further investigation showed that B.T. had been

working at CrossFit Fort Vancouver, a gym in Washington, since October 2012.

33.     The IRS has received additional direct evidence of Mondrianh's malfeasance and

dishonesty in the form of emails with one of her customers.  Mondrianh's customer, S.H., who

was in the United States, had been contacted by the IRS regarding an examination of his federal

income tax returns for tax years 2008, 2009, and 2010.  On August 30, 2012, S.H. emailed

Mondrianh to see if she had submitted "the paper work [sic]" to the IRS.  Mondrianh confirmed

that she had in fact mailed her combat zone form letter to the IRS on S.H.'s behalf.  On the same

day, the IRS received Mondrianh's combat zone form letter, which falsely claimed that S.H. was

presently deployed overseas.

34.     On August 31, 2012, S.H. again emailed Mondrianh about the IRS's intent to

examine his tax returns.  As the following excerpt of their email exchange reveals, Mondrianh

urged a customer to lie to a revenue agent in order to forestall an IRS audit:

> S.H.:          Karen, The IRS saying [sic] that they need the documents they requested.
> They called and said they were sent a letter saying I was currently
> deployed to a combat zone.  They want me to go in to see them on
> Wednesday.  Do you want a power of attorney to represent me. [sic]
> Please let me know what I need to do.
>
> **Mondrianh:   Please tell me you didn't talk with them.**
>
> **Mondrianh:   The only way to not be audited is to be over seas [sic]. Did you tell
> them differently?**

| S.H.: | am i screwed [sic] |
|---|---|
| **Mondrianh:** | **No. How do they have your home number?  I need you to have your wife call them back and tell them you are currently in Iraq.  Say nothing else.** |
| S.H.: | She will not do that.  If they audit me what will happen [sic] |
| **Mondrianh:** | **You can call them yourself and tell them you are out of the country.** |
| S.H.: | they came to my house.  I am pretty sure they know I'm here.  Is there any other way to stop this. [sic]  what if they find out i am lying [sic] |
| Mondrianh: | When did they come to your house? |
| S.H.: | Today |
| **Mondrianh:** | **They called and came by.  They spoke to your wife?  You need to call them and tell them you are on your way back out for deployment and you are available [sic] for an audit.** |

35.     I.R.C. § 7212(a) provides for penalties for individuals who corruptly endeavor to "impede any officer or employee of the United States acting in an official capacity under [the Internal Revenue Code]," or in any other way corruptly obstruct or impede the due administration of the Internal Revenue Code.  Mondrianh endeavored to impede the IRS's examination in collection efforts by encouraging her customers to lie to the IRS to forestall examination of returns that Mondrianh prepared.  Mondrianh also obstructed the IRS's examination in collection efforts by falsely invoking the statutory protection provided by I.R.C. § 7508, in some cases without her customers' approval and without verifying that her customers were in fact eligible for statutory protection.

36.     Moreover, Mondrianh lied to the IRS to evade service of an IRS summons issued to her.  She fraudulently used another woman's name and identifying information to falsely claim that she did not live at the address listed in the IRS summons.  Mondrianh therefore engaged in conduct subject to penalty under I.R.C. § 7212(a).

**<u>Ongoing Harm to the United States</u>**

37.     Mondrianh has prepared at least 792 federal income tax returns for the last six tax years.  Based on the IRS's examination of a sample of returns filed for tax years 2009 and 2010, the Service has found that 86.7% of the returns prepared by Mondrianh substantially understate taxable income.

38.     As of May 17, 2013, the IRS had examined 34 federal tax returns prepared and filed by Mondrianh on behalf of 28 of her customers.  Those 34 audits resulted in over $4.9 million in adjustments to taxable income and over $1.3 million in tax deficiencies for Mondrianh's customers, with an average tax deficiency of over $38,000 per return.

39.     With an error rate of 86.7% and an average tax deficiency of over $38,000 per return, the United States estimates that Mondrianh's scheme could have cost the U.S. Treasury as much as $26 million in lost tax revenue.  The harm to the United States continues with every tax return she prepares.

**<u>COUNT I: INJUNCTION UNDER I.R.C. § 7407</u>**

40.     The United States incorporates by reference the allegations contained in paragraphs 1 through 39.

41.     Under I.R.C. § 7407, the United States may seek an injunction against any tax return preparer who has engaged in any "fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws," or who has "engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title."

42.     If a return preparer's misconduct is continual or repeated and the court finds that a narrower injunction (*i.e.* prohibiting specific enumerated conduct) would not be sufficient to

prevent the preparer's interference with the proper administration of federal tax laws, the court may enjoin the person from further acting as a return preparer.

43.     Mondrianh has continually and repeatedly prepared and filed with the IRS false federal income tax returns on behalf of her customers.  As a result, Mondrianh has continually and repeatedly engaged in fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws.

44.     Mondrianh has continually and repeatedly prepared and filed federal tax returns that understate her customers' tax liabilities as a result of unreasonable positions, and has thus engaged in conduct subject to penalty under I.R.C. § 6694(a).

45.     Similarly, Mondrianh has continually and repeatedly prepared and filed federal tax returns that understate her customers' tax liabilities as a result of Mondrianh's willful attempt to understate her customers' tax liabilities or Mondrianh's reckless or intentional disregard of internal revenue laws and regulations, and has thus engaged in conduct subject to penalty under I.R.C. § 6694(b).

46.     Mondrianh failed to produce, at the Secretary's request, a copy her client list, which she was required to maintain under I.R.C. § 6107(b).  Mondrianh has thus engaged in conduct subject to penalty under I.R.C. § 6695(d).

47.     Finally, Mondrianh also used without permission another woman's identifying information to defeat service of an IRS summons served at Mondrianh's residence.  Mondrianh also attempted to impede the IRS's examination of her customers' federal tax returns, including directing at least one customer to lie or have his wife lie about having been deployed overseas to a combat zone to forestall the IRS's investigation.  In so doing, Mondrianh corruptly endeavored

to obstruct or impede the due administration of the Internal Revenue laws, and engaged in conduct subject to penalty under I.R.C. § 7212(a).

48.     Injunctive relief is appropriate to prevent this misconduct because, absent an injunction, Mondrianh is likely to prepare more false and fraudulent federal income tax returns and engage in other misconduct as described in this complaint.

49.     Mondrianh should be permanently enjoined under I.R.C. § 7407 from acting as a federal tax return preparer because a more limited injunction would be insufficient to stop her from interfering with the proper administration of the tax laws.

## COUNT II: INJUNCTION UNDER I.R.C. § 7408

50.     The United States incorporates by reference the allegations contained in paragraphs 1 through 49.

51.     Under I.R.C. § 7408(c)(1), a district court may enjoin any person from, *inter alia*, engaging in conduct subject to penalty under I.R.C. § 6701 if injunctive relief is appropriate to prevent recurrence of that conduct.

52.     I.R.C. § 6701 imposes a penalty on any person who aids or assists in, procures, or advises with respect to, the preparation of any portion of a return, affidavit, claim, or other document, who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and who knows that such portion (if so used) would result in an understatement of the liability for tax of another person.

53.     Mondrianh prepared and aided or assisted in the preparation and filing of federal income tax returns and other documents that resulted in the understatement of her customers' tax liabilities.  As a result Mondrianh has engaged in conduct subject to penalty under I.R.C. § 6701.

54.     Mondrianh has shown no remorse for her actions.  Injunctive relief is appropriate to prevent recurrence of Mondrianh's misconduct.

## COUNT III: INJUNCTION UNDER I.R.C. § 7402

55.     The United States incorporates by reference the allegations contained in paragraphs 1 through 54.

56.     Under I.R.C. § 7402(a), a court may issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

57.     Mondrianh substantially interferes with the enforcement of the internal revenue laws by filing false and fraudulent federal tax returns on behalf of her customers, and by interfering with the IRS's examination of her customers' federal tax returns.

58.     As a result of Mondrianh's misconduct and her false and fraudulent claims, Mondrianh's customers fail to file proper tax returns, and, consequently, may be penalized under I.R.C. § 6676 for up to 20 percent of the excessive and fraudulent refund claims.  The United States estimates that Mondrianh's scheme may have cost the American taxpayers as much as $26 million in lost tax revenue, and the harm to the United States continues every day that Mondrianh remains in business.

59.     Mondrianh's conduct results in irreparable harm to the United States and to the public for which there is no adequate remedy at law.

60.     Unless enjoined by this Court, Mondrianh will continue to file false and fraudulent federal tax returns on behalf of her customers.

61.     The United States is entitled to injunctive relief under I.R.C. § 7402(a) to prevent the recurrence of this misconduct.

WHEREFORE, the United States of America prays for the following relief:

A.      That the Court find that Mondrianh has continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694, 6695, 6701, and 7212(a), and that injunctive relief is appropriate under I.R.C. § 7402, 7407, and 7408 to bar Mondrianh from acting as a tax return preparer;

B.      That the Court find that Mondrianh has substantially interfered with the enforcement and administration of the internal revenue laws, and that injunctive relief against her is appropriate to prevent further misconduct pursuant to I.R.C. §§ 7402(a), 7407(b)(2), 7408(b)(2);

C.      That the Court permanently enjoin Mondrianh from acting as a federal tax return preparer and from preparing or filing federal tax returns or forms for others, from representing others before the IRS, and from advising anyone concerning federal tax matters;

D.      That the Court permanently enjoin Mondrianh and her representatives, agents, servants, employees, attorneys, independent contractors, and anyone in active concert or participation with her, from directly or indirectly:

(1)     Preparing or filing, or assisting in, or directing the preparation or filing of any federal tax return or amended return or other related documents or forms for any other person or entity;

(2)     Advising taxpayers to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the misuse of false IRS Forms 1040, 1040X, 2555, Schedule C, or other IRS forms;

(3)     Engaging in conduct subject to penalty under I.R.C. §§ 6694 or 6701, including

preparing and filing tax returns and other documents that understate the tax

liabilities of others;

(4)     Engaging in conduct subject to penalty under I.R.C. § 7212(a), including

interfering with or impeding the IRS's examination of federal tax returns;

(5)     Engaging in any other conduct that is subject to penalty under the I.R.C. or that

interferes with the proper administration and enforcement of the internal revenue

laws;

E.      That this Court permanently enjoin Mondrianh from preparing her own federal

income tax returns that fabricate expenses or purposely understate her own tax liability;

F.      That this Court order Mondrianh to contact all persons and entities for whom

Mondrianh has prepared any federal income tax return or other tax-related documents in the past

three years and inform those persons of the entry of the Court's findings and attach a copy of the

permanent injunction against Mondrianh;

G.      That this Court order Mondrianh to provide to the United States a list of all

individuals and entities for whom Mondrianh has provided tax preparation services or tax advice

in the past three years;

J.      That this Court allow the government full post-judgment discovery to monitor

Mondrianh's compliance with the injunction; and

K.      That this Court grant the United States such additional relief as the Court deems

just and appropriate.

SARAH R. SALDAÑA
United States Attorney

SEAN BEATY
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C.  20044-0683
Virginia Bar #67941
Facsimile: (202) 514-6770
Telephone: (202) 616-2717
Email: sean.p.beaty@usdoj.gov

Attorney for the United States of America